[No. 7627.   Department Two.   January 8, 1910.]

SEATTLE HARDWARE COMPANY, *Plaintiff*, v. J. C. WAUGH *et al.*, *Respondents*, and M. P. HURD, *as Administrator etc.*, *Appellant*.[1]

RECEIVERS—FINAL ACCOUNTING—ORDER OF SALE—CONSTRUCTION. An order for a receiver's final sale of assets embracing "all book accounts, bills, claims, lumber, logs, and all other personal property owned or claimed by said receiver," does not include cash on hand or items of money or property that the receiver took without authority for his private use or wrongfully advanced to a company in which he was interested, not carried on the books or reported to the court, and the existence of which was not known to the court or creditors at the time of the sale; and the receiver is therefore properly required to account for the same as cash on hand.

[1]Reported in 106 Pac. 471.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered February 18, 1908, upon findings against a receiver, upon a hearing on his final report, requiring the payment by the receiver of moneys for which he had not accounted.   Affirmed.

*Jay C. Allen* and *M. P. Hurd,* for appellant.

*J. C. Waugh* and *Roberts & Hulbert,* for respondents.

MOUNT, J.—After the appeal was taken in this case, the appellant died.   His death was suggested at the oral argument, and it was then stipulated that the administrator should be substituted as appellant.   M. P. Hurd has since been appointed administrator of the estate of the appellant, and said substitution is accordingly made.

It appears that, in the year 1903, an action was brought by the Seattle Hardware Company against J. C. Waugh and others, doing business under the name of the North Avon Lumber Company.   In that action J. E. Potts was appointed receiver of the property of the lumber company, and took possession thereof.   He was authorized by the court to operate the sawmill and to carry on the business of the company.   About that time the receiver and one H. B. Freeman organized a logging company, known as the Freeman Logging Company.   The receiver thereupon, by permission of the court, entered into a contract with the Freeman Logging Company, of which he was a member as before stated, by which contract the logging company agreed to cut saw logs from lands belonging to the lumber company in possession of the receiver, and to deliver such logs at the mill of the receiver at a fixed price.   The receiver was also authorized by order of the court to make certain repairs to the mill, not to exceed $5,000.   Repairs were subsequently made which cost in excess of $10,000.

After the mill had been operated by the receiver for about three years, and none of the debts of the lumber company

had been paid, and many reports had been made by the receiver showing the financial condition of the receivership, the receiver made a report to the court that Schwager & Nettleton, a corporation, had offered to purchase "the whole of said plant, including all lands, all machinery, lumber, and book accounts, all timber tracts and leases," and pay therefor $9,600, and assume all the receiver's liabilities except the salary of the receiver and his attorney's fees. The report also represented that this sum of money would pay the creditors about fifty-five per cent of the face of their claims,. and that a large majority of the creditors of the lumber company had agreed to accept fifty per cent of the face of their claims and satisfy the same, and were willing that the property should be sold to Schwager & Nettleton upon the terms proposed. The receiver recommended and petitioned the court to order such sale. Thereupon a notice was. given to all the parties interested to appear at a certain time and place and show cause why the order of sale should not be made as recommended. The defendants in the original action objected to the sale. At a hearing on March 26,. 1906, the court made an order for the sale of the property as follows:

"It is therefore ordered, adjudged and decreed that J. E. Potts as receiver herein be and he is hereby directed to forthwith make and execute a good and sufficient deed of conveyance of all the real estate hereinbefore described to said Schwager & Nettleton, Incorporated, and that he shall also make and execute a good and sufficient bill of sale of all the personal property owned or possessed by said receiver, including mill machinery, appliances, buildings, all book accounts, bills, claims, lumber, logs, and all other personal property owned or claimed by said receiver, and that he shall also execute to said Schwager & Nettleton, Incorporated, a good and sufficient assignment of all leases, agreements now held or owned by him as such receiver, and that upon delivery of such conveyance he accept from Schwager & Nettleton, the said sum of $9,600, and that he forthwith pay out of the same, the sum of $1,075 to C. S. Wiley, $200

to Messrs. Hurd & Brickey, and fifty cents on the dollar on the face of all claims presented to him as hereinbefore mentioned, and that the balance of said money be retained in his possession until the further order of this court."

Thereupon the transfer was made by the receiver as directed, and $9,600 was paid to him by Schwager & Nettleton, and the same was disbursed as directed. Thereafter the receiver made his final report, setting forth all his acts and doings, and showing a balance of cash on hand amounting to $38.89, and prayed for a discharge. The defendants in the original action, and Tatum & Bowen, one of the creditors, filed certain objections to the report, and charged that the receiver had not accounted for all the funds received by him. The hearing was had upon this report, and the objections made thereto, and the court found, among other things, that:

"(7)   On March 26, 1906, there was cash in the hands of the said receiver amounting to eighty-seven and 21-100 dollars; and that after making the said sale to the said Schwager & Nettleton and after paying fifty cents on the dollar on all the claims, as directed by the court, out of the said purchase price of ninety-six hundred dollars received from Schwager & Nettleton, Inc., the said receiver had remaining the sum of thirty-eight and 89-100 dollars.

"(8)   The court further finds that the said receiver sold ————Angevine certain telegraph poles cut and removed from the lands owned by the said association, for which the said receiver received the sum of ———— dollars; that it is admitted by the said receiver that there was due the said estate at least the sum of ninety-three and 70-100 dollars received from the said Angevine on account of said poles; that the said receiver never made any entry in his books regarding the sale of these poles, and never at any time accounted to this court for the sum received therefor and was not entered upon any of the books or files of the said receivership nor in any wise reported to the court or to the creditors or the defendants herein.

"(9)   That the said receiver, on or about ————, without any order or authority from this court, sold to the

Sumner Iron Works of Everett, a lot of machinery and mill equipment belonging to the said receivership for the sum of three hundred dollars; that the said sale was not authorized by the court and said receiver failed to make any report of said sale and failed to make any account for the proceeds thereof; that the said receiver took in exchange for the said machinery other goods and machinery in payment, not for the benefit of said receivership, but for the Freeman Shingle Company, a corporation, in which the said receiver directed that the said machinery received from the said Sumner Iron Works, as aforesaid, be shipped direct to Hamilton to the said Freeman Shingle Company.

"(10)    The court finds that on or about ——— the said receiver sold to the Sumner Iron Works a quantity of lumber amounting to three hundred and fifty-seven and 59-100 dollars for which the said receiver made no report to this court and did not in any manner account therefor, but, on the contrary, took in exchange therefor certain machinery for the Freeman Shingle Company, in which the said receiver was interested as aforesaid; that neither of said transactions with the said Sumner Iron Works appears upon the books of the receivership and were not in any wise reported to this court until upon the hearing of this report.

"(11)    That after the application of the said Schwager & Nettleton to purchase the property of said receivership, and before the 26th day of March, the time of the sale, the said receiver advanced to the Freeman Logging Company sixty-six hundred and seventy-nine and 98-100 dollars, or the sum of thirty-two hundred and five and 11-100 dollars more than was due the said Freeman Logging Company for logs delivered during said time; that the said receiver was during all said times interested in said Freeman Logging Company, owning one-half interest therein; that the said moneys were so advanced to the said Freeman Logging Company without any authority and without the knowledge of this court or the creditors or the defendants herein.

"(12)    That on February 1, 1906, without any authority and without the knowledge of this court or any of the creditors or the defendants herein, the receiver paid to himself out of the moneys in his hands as receiver the sum of six hundred dollars, which he claims was due him as salary from the time of his appointment to January 5th, 1906; the court finds as a fact that the receiver's salary for said period had

been settled by an order of the court, and that the court did not at the time of making said order, and does not now feel, that the said receiver was entitled to more than the compensation then allowed by the court in the order aforementioned."

Based upon these findings, the court entered an order requiring the receiver "to immediately pay into the registry of the court the sum of $4,682.50, to be disposed of by the further order of this court." The receiver has appealed from that order.

It is contended here that, under the order of sale, the proceeds of all these items, except the $38.90 and the $600 item which the receiver appropriated as salary, were "claims, bills, or accounts due the receiver," and passed by the sale above mentioned to Schwager & Nettleton, and that the receiver paid the same to Schwager & Nettleton, and thereafter was discharged, and that it was error for the court to require the receiver to pay the amount thereof into court to be disposed of as assets of the receivership. The items, tersely stated, were as follows: $38.90 balance of the $9,600 in the receiver's hands after paying fifty per cent of the claims of the creditors and the attorney's fees; $87.21 cash on hand as reported prior to the sale of the property; $93.70 for poles sold to Angevine and collected by the receiver; $300 for machinery which was sold by the receiver and used to pay individual debts of his own; $357.59 for lumber used in the same way; $3,205.11 cash advanced by the receiver to the Freeman Logging Company of which he was a member; and $600 cash appropriated to himself as salary to which he was not entitled.

It is conceded that the first and last items mentioned above should be paid into court as directed. But appellant contests the other items upon the grounds stated above. None of these items appear to have been carried upon the books of the receivership, or to have been reported to, or filed with, the court as assets in the hands of the receiver prior to the order

of sale, except the item of $87.21. The existence of these items was not made known to the court or creditors or to counsel in the case, prior to the time of sale. These items, therefore, could not have been, and evidently were not, considered when the order of sale was made, and were not in contemplation of the parties at the time the bid was made by Schwager & Nettleton, or at the time the order of sale was made. The trial court, upon the hearing of the final report of the receiver, was of the opinion that these items, having been received in money or its value and retained by the receiver for his private use, must be treated as cash in his hands, and that such items did not pass to Schwager & Nettleton as "book accounts, bills, claims, lumber, logs and all other personal property."

We think the trial court must be sustained in this ruling. It was clearly not the intention of the parties to sell or convey money in the hands of the receiver, and we think the wording of the order above quoted cannot be so construed as to include the conveyance of money. Appellant does not now insist that the first and last items, concededly being money in the receiver's hands, passed to the purchaser, for it is conceded that these items must be paid into court by the receiver. The other items, while not actually cash in the hands of the receiver, should be treated as such, because the evidence shows that the item of $93.70 for poles was actually paid to the receiver through his daughter, who was acting as the receiver's agent to collect the same. The two items amounting to $657.59 were used by the receiver out of the estate to purchase property for his own use. Instead of taking cash, he took machinery and lumber, and of course became personally responsible for the amount thereof in cash. As to the other item of $3,205, this was actual cash of the receivership, advanced in excess of what was due to the company, in which the receiver was personally interested. He was not authorized by any order of the court to do any of the things above mentioned. In short, all these transactions amounted to taking

cash out of the receivership estate and converting it to the private use of the receiver. He was bound to account for these funds as cash in hand, and not as book accounts, claims, bills, or property due the receiver. It will not do to say that a receiver may, without an order of court, take cash out of the estate, convert such cash to his private use, or—which is the same thing—exchange property of the estate for other property for his personal use, and then be heard to say that the estate merely holds a claim or account against him. When he receives cash or its equivalent from the estate, he must account for it as such. We therefore think the trial court was right in treating the amount of these items as cash in the hands of the receiver. The fact that the receiver misconstrued the order of the court and paid the amount of these items to Schwager & Nettleton, if he did so, does not relieve him from liability to account to the court for the funds of the estate. If there was any doubt in his mind as to the proper disposition to be made of the money in his hands, his safe course was plain.

The judgment appealed from is therefore affirmed.

RUDKIN, C. J., DUNBAR, PARKER, and CROW, JJ., concur.